IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 25, 2017 at Knoxville

## STATE OF TENNESSEE v. TONY ANTHONY HATLEY

**Appeal from the Circuit Court for Tipton County**
No. 8594     Joseph H. Walker, III, Judge

No. W2016-01802-CCA-R3-CD

The Defendant, Tony Anthony Hatley, pled guilty to theft of property valued at $1000 or more but less than $10,000, a Class D felony, and possession of drug paraphernalia, a Class A misdemeanor, in exchange for an effective sentence of eight years with the manner of service to be determined by the trial court. Following a sentencing hearing, the trial court imposed a sentence of confinement, which the Defendant now challenges. After review, we affirm the sentencing decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and J. ROSS DYER, JJ., joined.

Michael Thorne, Lexington, Tennessee (on appeal); Bo G. Burk, District Public Defender; and Melissa Downing, Assistant Public Defender (at hearing), for the appellant, Tony Anthony Hatley.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and James Walter Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The Defendant was indicted in Case Number 8594 for theft of property valued at $1000 or more but less than $10,000, in Count 1, and possession of drug paraphernalia, in Count 2. The Defendant pled guilty to these counts, and the State recommended a sentence of eight years served at 45% release eligibility in Count 1 concurrent with a sentence of eleven months and twenty-nine days in Count 2. A sentencing hearing would

be held to determine the manner of service of the sentence. At the guilty plea hearing, the State recited the facts it would have presented at trial as follows:

> [O]n July 14, 2015, in Covington, Tennessee at approximately 8:26 in the evening, Officer Ginn with the Covington Police Department responded to a shoplifting at Wal-Mart. Officer Ginn met with the loss prevention officer. Loss prevention officer, Mr. Young, advised that he had seen a suspect on camera, later identified as [the Defendant], putting assorted items into a car seat box. [The Defendant] opened the box and removed the car seat and started to refill the box. Officer Ginn observed by camera [the Defendant] remove security sensors from one item in electronics. [The Defendant] then proceeded to take the box to the infant section where he placed multiple items in the box, which had a total value of $1,221.43. The car seat, which was removed, was valued at $54.88.
>
> [The Defendant] retaped the box using tape from the store. [The Defendant] then placed the box back on the shelf and attempted to exit the store. [The Defendant] was apprehended at the grocery door entrance. They did show [the Defendant] was with an unknown black female. Officer Ginn was unable to make contact with the female.
>
> [The Defendant] had a glass pipe back in his pocket at the time of the stop. [The Defendant] admitted to smoking heroin[] prior to being in Wal-Mart.

The Defendant was also charged in two other indictments. In Case Number 8595, the Defendant was charged with driving under the influence ("DUI"), driving while license suspended, introduction of contraband into a penal facility, and possession of less than 0.5 grams of a Schedule II controlled substance with intent to deliver. He agreed to plead guilty to DUI, driving while license suspended, and simple possession, with the sentence from that indictment to run concurrently to the sentence in Case Number 8594. In addition, the Defendant was indicted in Case Number 8733 for failure to appear. He agreed to plead guilty to that charge with a four-year sentence at 45% to run consecutively to the sentences stemming from the other two indictments. The State provided a factual basis for each of the other cases, and the Defendant stipulated to the facts.

The trial court then engaged in a plea colloquy with the Defendant to ensure that he was aware of the rights he was waiving and the sentences he was facing. The court stated that the Defendant was facing an effective twelve-year sentence from the three indictments and that there would be a hearing to consider "relief from incarceration."

However, the court noted that there was "no guarantee" that the relief would be granted, which the Defendant acknowledged that he understood. The Defendant indicated that he was satisfied with the representation of his attorney and that no one was forcing him to enter the pleas. Thereafter, the Defendant pled guilty to the offenses, and the trial court accepted his pleas.

At the sentencing hearing, the trial court first accepted the presentence report "as submitted," after defense counsel noted that she had reviewed it "and there [we]re no corrections." The report reflected that the forty-eight-year-old Defendant had thirty-six prior convictions, including three assault-related and sixteen theft-related offenses. The report also reflected a number of prior arrests and dismissed charges. The Defendant only had one verified period of employment, between May 2014 and July 2015.

The Defendant testified that he began using drugs recreationally after leaving the Army and had now been addicted to cocaine for more than twenty years. He said that "drugs have always gotten [him] in trouble," but he never got help because he "always thought [he] could cure it [him]self." Up to this point, the longest he had been in jail due to his drug problem was three or four years. He claimed that he committed the theft at Walmart to support his drug habit. After he was released from jail following his arrest in this case, the Defendant went to a rehabilitation facility called Harbor House on his own accord and completed a twenty-eight-day treatment program.

The Defendant testified that, after he finished the program at Harbor House, he and his wife moved to Maryland. He continues to go to meetings "everywhere, anywhere [he] get[s] a chance" to help him overcome his addiction. The Defendant denied moving to Maryland to avoid the pending charges, despite the fact that he missed a court date which ultimately resulted in his charge of failure to appear. He claimed that he missed that court date because he thought it was scheduled for May 14, not March 14. He indicated that he would "transfer" his probation to Maryland if the court placed him on probation. He said that he had a job in Maryland working as painter, and he was working on obtaining a "pipefitter's certificate." The Defendant stated that, for the first time in his adult life, he had been sober for a little over a year and that had changed his view of life.

On cross-examination, the Defendant acknowledged that the presentence report showed that he was charged with shoplifting in West Virginia that occurred after the offense in this case but claimed it was an "old charge[]" that he had "disposed of." He then admitted to a number of felony and misdemeanor offenses he had committed in other states and that he had also been charged with failure to appear in other states.

At the conclusion of the hearing, the trial court recognized the Defendant's efforts at rehabilitation and suspended his sentence in Case Number 8733, which was agreed to run consecutively to his sentences in the other cases. However, in light of the Defendant's long history of criminal behavior and his behavior with regard to the facts of the case, the court declined to suspend the Defendant's sentence in Case Number 8594. Thus, the Defendant received a partial alternative sentence but was ordered to serve eight years at 45% release eligibility.

The Defendant filed a timely notice of appeal through counsel. After that, the Defendant filed a pro se motion for reconsideration, alleging that he was led to believe he would receive probation as a condition of his plea and that he would not have pled guilty otherwise. He also simultaneously filed a pro se notice of appeal and "motion for notice of appeal" regarding the allegation, which the trial court denied. The Defendant's appeal of the trial court's imposition of a sentence of confinement in Case Number 8594 is now before this court.

## ANALYSIS

A trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. This standard of review also applies to "questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6).

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. Id. § 40-35-303(a). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he is a suitable candidate for probation. Id. § 40-35-303(b); State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. See State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997); Bingham, 910 S.W.2d at 456.

In determining if incarceration is appropriate in a given case, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1). Furthermore, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. Id. § 40-35-103(5).

The Defendant contends that the trial court erred in denying him an alternative sentence and imposing a sentence of confinement in Case Number 8594. He asserts that the trial court should have relied on the absence of bodily injury, the fact that the owner was not deprived of property, and his amenability to rehabilitation. The trial court based its denial on the Defendant's long history of criminal behavior and his behavior with regard to the facts of the case. The record shows that the Defendant has a history of criminal conduct spanning at least twenty-six years and including thirty-six prior convictions, as well as numerous other arrests and dismissed charges across multiple states. He admittedly has a long history of drug abuse. In addition, the circumstances of the offense show that the Defendant brazenly removed merchandise from its appropriate box and replaced it with merchandise that was over $1000 more valuable. He did this after smoking heroin and while in possession of drug paraphernalia. Under the Bise standard of review, "a trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." State v. Sihapanya, 516 S.W.3d 473, 476 (Tenn. 2014) (order) (per curiam). We conclude that the trial court did not abuse its discretion in denying the Defendant full probation.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the sentencing decision of the trial court.

_____
ALAN E. GLENN, JUDGE